SO ORDERED: April 15, 2010.



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>BRADLEY WILLIAM SHIELDS )<br>AMANDA SHAY SHIELDS )<br>)<br>    Debtors )<br>_____) | CASE NO. 08-15198-AJM-13 |

**ORDER ON TRUSTEE'S MOTION FOR INSTRUCTIONS**

*BACKGROUND*

The Debtors filed their chapter 13 case on December 5, 2008. The Debtors scheduled Citifinancial Services, Inc. ("Citifinancial") as an unsecured creditor with a claim of $7397.00. In their statement of financial affairs, the Debtors in question 4 listed Citifinancial's pre petition lawsuit in the nature of "civil collection" against the Debtors pending in the Monroe Circuit Court (the "State Court"). This chapter 13 case was dismissed on September 8, 2009. Because the Debtors' chapter 13 plan had not

1

been confirmed, the Chapter 13 Trustee (the "Trustee") was holding $3297.26 (the "Funds") which had been paid by the Debtors into their plan. There is no pending claim for administrative expenses under 11 U.S.C. §503(b). The case was closed on October 14, 2009.

After dismissal of the chapter 13 case but before the Trustee disbursed the Funds and the case was closed, Citifinancial obtained from the State Court and served on the chapter 13 trustee an Order of Attachment which directed the Chapter 13 Trustee to pay the Funds to Citifinancial (the "State Court Order"). The Trustee moved this Court for instructions as to how to dispose of the Funds. The Debtors have not requested that the Funds be paid to them.

This matter was initially heard on December 14, 2009 wherein the Court took the matter under advisement but granted leave for Citifinancial to file a brief within 14 days and the Trustee 14 days thereafter. The Court, on its own motion, held a status conference on the matter on December 22nd, suggesting alternatives how to resolve the matter. At the conclusion of that status conference, the Court extended the deadlines by which briefs were to be submitted. Citifinancial and the Trustee filed their briefs on January 14, 2010 and March 4th respectively.

## DISCUSSION
### 11 U.S.C. §1326(a)(2)

Conflicting claims to funds held by a chapter 13 trustee in a dismissed case are not a common occurrence, perhaps because judgment creditors do not get around to resuming collection proceedings until after the trustee returns the funds to the debtor. When such a conflict occurs, the Trustee maintains that the unambiguous language of

2

§1326(a)(2) controls and requires that the funds be returned to the debtor, despite any competing claim to the funds. That section provides:

> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3), to the debtor, after deducting any unpaid claim allowed under section 503(b).

This section may not be as unambiguous and absolute as the Trustee contends. A notice of tax levy issued by the Internal Revenue Service and the broad reach of the provisions of the tax code trump a debtor's right to receive the funds under §1326(a)(2). *In re Pruitt*, 2008 WL 2079145 (Bkrtcy. M. D. Ala.) (holding, however, that amounts payable to the debtor's attorney under §503(b) and amounts properly exemptible under the tax code are not subject to the IRS' levy); *In re Brown*, 280 B.R. 231 (Bankr. E.D. Wis. 2002); *In re Pendrick*, 20 B.R. 972 (Bankr. N. D. Ohio 1982). Where a state taxing authority lays claim to the funds, the case law varies. Some courts order the funds to be turned over directly to the state tax authority on the basis that §362 terminates the automatic stay upon dismissal and that nothing in §1326(a)(2) extends post dismissal protection to the funds since they are no longer property of the estate. *In re Steenstra*, 307 B.R. 732 (B.A.P. 1st Cir. 2004); *In re Doherty*, 229 B.R. 461 (Bankr. E. D. Wash. 1999). One court, satisfied that the state taxing authority would not be prejudiced, ordered return of the funds to the debtor under §1326(a)(2) because the funds under state law were impressed with a lien which followed the funds into the hands of the debtors. *In re Clifford*, 182 B.R. 229 (Bankr. N. D. Ill. 1995).

Funds are more likely to be returned to the debtor under Section 1326(a)(2) when the competing claimant to the funds is not a state or federal taxing authority but a private creditor who obtained a judgment pre petition. In such cases, some courts have held that the language of §1326(a)(2) is clear and unambiguous and mandates return of the funds to the debtor after payment of administrative expenses under §503(b), leaving the garnishing creditor to collect the debt through state court proceedings. *In re Inyamah*, 378 B.R. 183 (Bankr. S. D. Ohio 2007); *In re Bailey*, 330 B.R. 775 (Bankr. D. Ore. 2005); *In re Oliver*, 222 B.R. 272 (Bankr. E. D. Va. 1998).

Given the range of court decisions discussed earlier, the Court is not convinced that §1326(a)(2) absolutely controls here or that it is clear and unambiguous. Section 1326(a)(2) makes no mention of disposition funds upon *dismissal* (or, conversion, for that matter) of the case. Yet, when applied literally, the trustee would be required to return funds even when the chapter 13 continues to pend and the debtor - having been denied confirmation of his plan- intends to file an amended plan. Because return of the funds is impracticable under such circumstances, this section has been assumed to apply when the case is converted or dismissed. Karen Cordry & Zachary Mosner, *Garnishing the Chapter 13 Trustee - What's the Plain Meaning of §1326(a)(2)?*, 27-FEB Am. Bankr. Inst. J. 12 (2008).

Assuming that §1326(a)(2) applies in dismissed cases, it does not, and cannot, provide for every scenario for disposition of funds in a dismissed case with an unconfirmed plan. For example, to whom should funds be returned upon the death of a debtor? Upon incarceration of a debtor? Upon incompetency of a debtor for which a guardian has been appointed? Would the Trustee argue that §1326(a)(2) directs him to

4

pay the funds to the debtor in such cases?  If the funds cannot be returned to the debtor due to the debtor's incarceration, incompetency or death, would the trustee hold the funds indefinitely?

### *11 U.S.C. §349(b)(3)*

Disposition of property upon dismissal is also discussed in §349(b)(3) which provides that estate property revests in the entity in which such property was vested immediately before the commencement of the case.  Section 349 applies regardless of case chapter and denial or confirmation of a plan.  However, this section is not without its own conceptual ambiguity.  Assuming that the Funds consist of the Debtors' post petition wages, how can property that did not exist before the commencement of the case "revest" in the Debtors?  See, *In re Lewis*, 346 B.R. 89 (Bankr. E. D. Pa. 2006).

I conclude that what §1326(a)(2) and §349(b)(3) *do* unambiguously provide for is the return of the funds to (after payment of §503(b) expenses) and the revesting of property in the debtor *where there are no post dismissal intervening events that challenge the debtor's right to receive the funds or claim the property.*  However, application of these sections beyond this garden variety scenario, in my opinion, just was not contemplated by Congress.   The Trustee does not dispute the validity of the State Court Order here.  I do not believe that Congress would have so easily disregarded creditors who, free from the automatic stay, enforce their judgments by obtaining valid state court garnishment orders and levying property that is neither property of the estate nor property needed to pay administrative claims.  Had Congress intended to sequester funds from these creditors under these circumstances, it certainly

knew how to provide for it and could have added "notwithstanding any challenge after dismissal but before closing of the case" or similar language to §1326(a)(2) or §349(b)(3). Nor do I think that returning the Funds to the Debtors and leaving Citifinancial to fend for itself in state court is an attractive outcome.

  Rather, I follow the lead of the *Steenstra* and *Doherty* cases and conclude that, §362 controls here. As stated in those cases, dismissal of a case terminates the automatic stay and the bankruptcy estate. What was formerly property of the estate revests in the entity in which it was vested prior to the commencement of the case under §349(b)(3) and is no longer property of the estate. Such property loses the protection of the automatic stay upon dismissal under § 362(c)(1) and nothing in §362, §349, or §1326 expressly shields from levy funds that are not needed to pay §503(b) claims. Since the funds are not protected, they are subject to levy and the trustee is like any other third party holding funds owed to a debtor against which a judgment creditor has levied. See, *In re Schlapper*, 195 B.R. 805, 806 (Bankr. M. D. Fla. 1996); *Steenstra*, 307 B.R. at 740.

  The Trustee contends that return of the Funds to the Debtors accomplishes three important statutory goals in that it (1) fosters the policy of encouraging chapter 13 filings; (2) allows a prompt closing of the estate, discouraging a race among creditors to the trustee; and (3) restores parties to their original pre petition positions by revesting the property to the debtors. This Court does not agree that return of the funds in a dismissed chapter 13 case encourages chapter 13 filings over chapter 7 filings. Rather, it unjustly rewards debtors who neither pay their creditors through a confirmed chapter nor opt to pay them through conversion to another bankruptcy chapter. And, "it is

6

unlikely that Congress would supply that incentive to one who may have decided to forego the responsibilities to one's creditor's contained in the Bankruptcy Code". *Doherty*, 229 B.R. at 466.

Payment of the funds to the debtor does not foster a prompt closing of the estate and discourage a race among creditors. The trustee's only concern is to whom the funds should be paid, whether it's the creditor, the debtor or the state court. The Court can appreciate the fact that the Trustee here seeks guidance as this issue of one of first impression in this District. However, once this Court establishes its position and the Trustee receives guidance for future cases pending in this Court, payment to the creditor or the state court will not delay the closing of the estate any more than payment of the funds to the debtors.

The Trustee argues that return of the Funds to the Debtors will restore the parties to there pre-petition status, apparently as suggested by §349(b)(3). Aside from the conceptual difficulty that the Funds here which were not in existence pre petition somehow now revest in the Debtors, I nonetheless reiterate my opinion that §349(b)(3) as written, like §1326(a)(2), was not intended to cover situations where a debtor's post dismissal right to property is challenged.

### *Preemption*

Nor is the State Court preempted from enforcing the State Court Order by the "mandate" of §1326(a)(2). The Supremacy Clause invalidates state statutes to the extent they are inconsistent with or contrary to the purposes or objectives of federal law. *Sheehan v. Peveich*, 574 F.3d 248 (4th Cir. 2009). The objective of chapter 13 is to financially rehabilitate debtors through the repayment of debt pursuant to a confirmed

plan. When the chapter 13 case is dismissed, the debtor no longer seeks financial rehabilitation from the bankruptcy court and the only objective remaining is to proceed to closing. That objective is accomplished by the trustee's administrative acts of disbursing funds and filing a final report, neither of which involves the debtors' financial rehabilitation. The State Court Order which seeks payment of the Funds is neither contrary to nor inconsistent with the remaining objective of performing the necessary administrative tasks needed to close the case.

### *The Barton Doctrine*

Finally, the Trustee argues that he should be "insulated from state court orders of attachment while performing his appointed duties" under the Barton Doctrine. *Trustee's Memorandum of Law Regarding Preemption* at 5. The Barton Doctrine discourages lawsuits brought in nonbankruptcy forums against bankruptcy trustees by requiring the party suing to first obtain leave of the bankruptcy court. *Barton v. Barbour*, 104 U.S. 126, 128-29, 26 L.Ed. 672 (1881) ("an equity receiver could not be sued without leave of the court that appointed him"). There is a legitimate concern that allowing a trustee to be sued without leave of court would divert the trustee's attention from administering the case. See, *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). The "integrity of bankruptcy jurisdiction" justifies the expansion of the Barton Doctrine to suits filed against trustees post closing, even though the trustee no longer "administers" the case. *Id.* at 545.

The Court is well aware that the Trustee carries a heavy chapter 13 caseload. The Trustee executes his duties superbly. The Court does not want this level of

8

performance compromised by state court proceedings that divert the Trustee's attention. The Trustee should not be required to defend against or otherwise appear in state court each time he is served with a garnishment order. For that reason, the Court will order the Trustee to issue a check made payable *to the Debtors* in an amount equal to the Funds, less any allowed §503(b) expenses (the "Check"). The Court will further order the Trustee to send the Check, properly identified with the State Court case number, to the State Court, at which point Citifinancial can resume its collection proceedings there. By ordering the Trustee to issue the Check payable to the Debtors and to send it to the State Court, the Trustee's concerns with §1326(a)(2)'s "mandate" are allayed and the Court preserves a source of recovery for Citifinancial. The Debtors will also have an opportunity in State Court to challenge Citifinancial's claim to the Check and assert any available exemptions to which they may be entitled. The Court believes this is the most practical method by which to deal with state court garnishment orders. If the State Court determines that Citifinancial is entitled to all of the Check proceeds, it can order the Debtors to negotiate the Check payable to Citifinancial, or, if the Debtors refuse, it can appoint a person to do so under Ind. R. Tr. P. 70. If the Court finds that Citifinancial is entitled to a portion of the Check proceeds, it can order the Debtors to issue another check payable to Citifinancial in the appropriate amount.

     Accordingly, the Court now ORDERS that the Trustee issue a check made payable to the Debtors in an amount equal to the Funds, less any allowed §503(b) expenses. It is FURTHER ORDERED that Trustee send the Check, properly identified, to the State Court. The Trustee and Citifinancial's counsel are in the best position to coordinate their efforts in completing these events, and therefore the Court will not set a

9

deadline by which they should be done.  However, should additional matters arise with respect to the Check while it is in the Trustee's possession, either party may request an emergency hearing at which time the Court will set at its earliest convenience.

# # #

Distribution:

Robert Brothers, Chapter 13 Trustee
Stacy Wissel, Attorney for the Chapter 13 Trustee
Stephen K. Andrews, Attorney for Citifinancial
Kevin Michael Weldon, Attorney for the Debtors